IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TROY OLMSTED,

                                      OPINION and ORDER

                Plaintiff,

                                      08-cv-439-bbc

    v.

MICHAEL SHERMAN,
in his official and personal capacities,

                Defendant.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is a civil action for monetary relief brought pursuant to 42 U.S.C. § 1983. Plaintiff Troy Olmsted contends that defendant Michael Sherman violated his rights under the First Amendment and the Wisconsin Constitution. Defendant destroyed plaintiff's personal photographs; plaintiff contends that the destruction was in retaliation for the grievances plaintiff filed and threatened to file. The case is before the court on defendant's motion for summary judgment, which will be granted. Plaintiff has failed to adduce evidence that would allow a reasonable jury to find that retaliation was a reason for the destruction

---

    [1] Plaintiff identified defendant as "Officer Sherman" in his complaint. I have amended the caption to reflect Sherman's full name as identified in defendant's summary judgment materials.

1

of plaintiff's photographs.

Before turning to the facts, it is worth reminding the parties that, pursuant to this court's summary judgment procedures, the only proposed facts that will be considered are facts that have been supported by admissible evidence. Thus, where the parties have proposed facts that are merely legal conclusions or that rely on inadmissible hearsay or that would require expert testimony but are supported only by testimony from a non-expert, those facts must be disregarded. Moreover, where plaintiff's cited affidavit says less than a given fact he proposes, only the actual contents of the affidavit will be considered.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Before December 21, 2005, plaintiff was incarcerated at the Green Bay Correctional Institution. At some time before that date, plaintiff mailed out several "inspirational and historical" photographs to be laminated, including photographs of his grandfather from the 1950s and photographs of other deceased family members. The prison's business office approved his lamination order and charged his account was charged for the service. After an outside company laminated the photographs, they were returned to the Green Bay property room.

2

On December 21, 2005, plaintiff was transferred to the Wisconsin Secure Program Facility.  Allowable personal property varies from institution to institution, depending on the facility's security and treatment programs. When plaintiff was transferred into the Wisconsin Secure Program Facility, he was placed in program segregation status and placed on the "Alpha" housing unit, where inmates are not allowed to possess photographs in their cells, but may have up to 50 photographs stored in their "main property" at the facility.

According to written policy at the Wisconsin Secure Program Facility, once a prisoner's incoming property arrives at the facility, it must be inventoried and inspected by a property officer.  At the time that plaintiff was transferred to the facility, defendant Michael Sherman was a property officer at the facility.  He inventoried plaintiff's incoming property on December 28, 2005 and brought to plaintiff's attention several property items that were not allowed by the facility's policies.  First, plaintiff had 140 photographs in his property.  When a prisoner has excess photographs in his property, it is defendant's general practice to bring the photographs to the inmate and direct him to choose the 50 photographs that he wants to keep in his possession.  The remaining photographs are mailed out or destroyed according to the prisoner's wishes.  In plaintiff's case, he mailed out 90 of the 140 photographs that defendant had inventoried.  (The parties dispute whether, among the photographs that plaintiff chose to keep were 18 laminated photographs.  According to defendant, he does not recall finding any laminated photographs within the photographs he

3

inventoried. According to plaintiff, defendant "approved" 18 laminated photographs and allowed plaintiff to keep them in his cell.)

Next, defendant told plaintiff that his fan was broken and that he would have to send it out or destroy it. Plaintiff told defendant his fan had not been broken and that he would file a complaint alleging that defendant or someone else must have broken the fan and should be held responsible. Defendant became irritated.

In addition, defendant told plaintiff that he had open consumable and hygiene items in his property that had to be destroyed. Defendant told plaintiff that he could not send those items out or even "hold them for a complaint." (Disposition of property may be challenged by filing a grievance. Under Department of Corrections Policy, when the disposition of the items is challenged, those items are generally retained until the warden decides the grievance.) Plaintiff responded by citing a Department of Corrections rule that he believed would allow him to send his open materials home. Defendant "stormed off," saying, "I don't care about complaints; inmates file them all the time."

On December 29, 2005, plaintiff filed complaint number WSPF-2005-39392 to complain about his broken fan. The Department of Corrections affirmed the complaint and reimbursed plaintiff for the cost of the fan. On January 3, 2006, plaintiff filed complaint number WSPF-2006-27 against defendant for the destruction of his open consumable and hygiene items. This complaint was affirmed and department officials found that defendant

4

had violated the policy. Even if the items would not have been permitted, defendant should have told plaintiff he had the option of mailing them out and should have held the items for review.

On February 20, 2006, defendant went to plaintiff's cell and informed him that he had gone into his stored property in the warehouse and was confiscating items that were sealed but expired. He stated, "I thought I'd better clear this with you first." When plaintiff asked defendant why he had gone into plaintiff's property, defendant smiled and said "because I can." Plaintiff told defendant that he was going to file a complaint regarding the items defendant was taking and defendant laughed, saying "if I had a nickel every time someone filed a complaint against me and nothing happened, I'd be rich," and walked down the hall mumbling something else.

Plaintiff filed complaint number WSPF-2006-4820 against defendant for the February 20, 2006 incident. The complaint was eventually dismissed with instructions that plaintiff tell defendant what he wanted done with the property.

During the time period in which plaintiff filed these complaints and over the next several months while at the facility, plaintiff filed 50 grievances. Some were against defendant and others involved conditions of confinement and other staff at the facility. In addition to the grievances, plaintiff filed a common law writ of certiorari challenging a disciplinary action he had received and alleging that certain officials at the facility had

5

engaged in ethical misconduct by submitting altered documents to a court. Finally, plaintiff filed "contempt charges" against certain officials at the facility, alleging that they had interfered in family court proceedings involving plaintiff.

On May 14, 2006, three correctional officers, not including defendant, searched plaintiff's cell. (Plaintiff attempts to show that defendant was not one of the officers who searched his cell, but his only evidence of this is a statement from a prisoner "three [cells] down" from plaintiff who states that he "believes" defendant was one of the officers who searched his cell. The other prisoner does not provide foundation for that "belief," such as having seen defendant enter plaintiff's cell that day. Indeed, it is not clear that the prisoner could have even seen plaintiff's cell from three cells away. Therefore, that evidence will be disregarded. The fact proposed by defendant that he did not search the cell remains undisputed.) During the cell search, 18 laminated photographs were seized as contraband under Wis. Admin. Code § DOC 303.10(2). Laminated photographs are not allowed at the Secure Program Facility. (Plaintiff attempts to dispute this fact by arguing that the photographs are not a security risk and that laminated photographs are allowed at other facilities. Neither of these arguments disputes the fact that such photographs are not allowed at the Secure Program Facility.)

A correctional officer named Hertrampf wrote and signed a Property Receipt/Disposition DOC-237 form for the 18 laminated photographs on May 14, 2006.

6

Defendant picked up the seized property from the unit and stored it.

On May 17, 2006, defendant wrote to plaintiff to tell him that he was not allowed to possess the 18 laminated photographs taken during the cell search and to ask him how he would like to dispose of them.  Around the same day, plaintiff had an opportunity to ask defendant why he took his photographs.  Defendant responded, "Because I can."  When plaintiff asked defendant what rule prohibited him from having laminated photographs, defendant just smiled and tapped his forehead as if it were just a rule in his head.

Defendant received an Interview/Information Request from plaintiff, asking defendant to place the confiscated photographs with his other property not allowed at the facility but allowed elsewhere and to tell plaintiff when he had done this.  On June 12, 2006, defendant responded to plaintiff's request to hold his photographs in storage, stating that this was not permitted and telling plaintiff to choose whether he wanted to destroy the items or mail them out.

On June 13, 2006, plaintiff filed a grievance, complaint number WSPF-2006-16708, alleging that defendant was refusing to place his photographs into his main property.  An inmate complaint examiner rejected the grievance that same day because it was filed after the 14-calendar-day limit set out in § DOC 310.11(5)(d).  On June 14, 2006, plaintiff appealed the rejection to the reviewing authority.  The warden did not review the grievance until June 30, 2006.

On June 26, 2006, defendant destroyed plaintiff's 18 laminated photographs. (Although the facts proposed do not establish directly that it was defendant who destroyed the photographs, defendant admitted in his brief that he had been responsible for destroying the photographs.) The destruction of the photographs was premature. The facility's policy provides that "[u]nauthorized property not disposed of or not sent out of the institution is considered contraband and will be disposed of after 30 days of the disposition as contraband." However, Wis. Admin. Code § DOC 303.10(3) prevents an automatic 30-day disposition where an "inmate files a grievance regarding the seizure or disposition of the property." In those cases, the property is to be retained "until the warden makes a final decision on the grievance." Id. Plaintiff filed such a grievance and it was not reviewed by the warden until June 30, 2006, at which time it was rejected.

(The parties dispute whether plaintiff refused to choose a method of disposal for the 18 laminated photographs other than leaving them in storage, which was not allowed. According to plaintiff, he wrote to defendant on June 14, 2009, stating that he wanted his photographs mailed to his mother in the event that he was unsuccessful in appealing his grievance seeking to have the photographs kept in storage. According to defendant, plaintiff never asked; if he had, defendant says he would have mailed the photographs out in compliance with plaintiff's request.)

8

OPINION

"To prevail on a First Amendment retaliation claim, [plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in [defendant's] decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 555-56 (7th Cir. 2009) (citations omitted); Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005). If a plaintiff shows that his "protected activity was a motivating factor in the defendant's retaliatory action," defendant may still prevail if defendant can establish that he would have taken the same action even if plaintiff had not engaged in the protected conduct. Mt. Healthy Board of Education v. Doyle, 429 U.S. 274, 287 (1977); Spiegla v. Hull, 371 F.3d 928, 943 (7th Cir. 2004).

Defendant focuses most of his energy on his argument that, even if plaintiff makes it past his initial burden of showing that plaintiff's protected activity was a "motivating factor" in destroying his photographs, they would have been destroyed anyway because they were contraband. It is not clear why defendant chose to focus on this question, on which he bears the burden. Mt. Healthy, 429 U.S. at 287. It is disputed whether plaintiff tried to have defendant send out his photographs rather than allow them to be destroyed once the grievance process had been completed. These disputes might require a jury to decide

9

whether the photographs would have been destroyed in any event.

However, defendant raised, if just barely, an easier question: whether his protected activity was a motivating factor in the destruction of plaintiff's photographs. Dft.'s Br., dkt. #27, at 6 ("In addition, the defendant destroyed the photographs in error . . . and not in retaliation against the plaintiff for threatening to file or filing grievances against the defendant."). At trial, it would be plaintiff's burden to show that his complaint-filing was a reason for defendant's destruction of the pictures. To survive a motion for summary judgment, plaintiff must show that he has evidence from which a reasonable jury could find that he could meet this burden.

In an effort to show that he could meet this burden, plaintiff points to defendant's comments about plaintiff's grievances, the timing of the grievances, defendant's comments and defendant's alleged knowledge of plaintiff's desire to send out his photographs. If find this evidence insufficient to allow a reasonable jury to find that plaintiff's grievances and threats to file grievances were one of the reasons that defendant decided to destroy plaintiff's photographs.

First, timing is not on plaintiff's side. Most of the allegedly protected activities that plaintiff identifies occurred around two specific times: immediately after defendant inventoried plaintiff's property the first time in December 2005 and in February 2006 after defendant identified expired items in plaintiff's property. Defendant did not take the

10

allegedly retaliatory act of destroying the photographs until June 2006, four months later. This can hardly be said to be so soon after the protected activity as to be suspicious. Adusumilli v. City of Chicago, 164 F.3d 353, 363 (7th Cir. 1998) (in Title VII case, evidence of causal link between protected expression and allegedly retaliatory act may be established through evidence that adverse act took place "on the heels" of protected activity). Even if the retaliatory act could be traced back to the day on which defendant removed the photographs, that was nearly three months after plaintiff says he filed or threatened to file a grievance against defendant.

Defendant's comments and behavior do little to support plaintiff's contention that defendant destroyed the pictures in retaliation for plaintiff's grievances or threats of grievances. Plaintiff seems to think the comments reveal defendant's resentment of plaintiff's threats and filings. In reality, the facts suggest that defendant was annoyed with plaintiff's combative nature more than with his willingness to file grievances. Although plaintiff describes defendant as "irritated" at plaintiff and as storming off after plaintiff threatened to file suit, the overall picture plaintiff paints suggests that the prospect of plaintiff's filing grievances did not seem to bother defendant. At most, he "smiled" mockingly at plaintiff when taking certain actions. Even viewed in the light most favorable to plaintiff, the facts establish only that defendant may have been annoyed with plaintiff's threats to file complaints and may have reacted unpleasantly in response to plaintiff's threats

11

to file grievances. Again, however, the comments plaintiff identifies occurred between December 2005 and February 2006, well before defendant destroyed the photographs. Plaintiff has suggested nothing to support his allegation that defendant's annoyance at this time somehow played into the later decision to destroy his photographs.

More problematic for plaintiff is the fact that, according to plaintiff, defendant was the one who had allowed him to keep the laminated photographs in his cell from the start. If that were the case, and plaintiff's grievances were a reason for destroying the photographs, why didn't defendant take the photographs earlier, such as when plaintiff filed the first set of grievances, or even the second? Why wait five months to take the contraband photographs that defendant allegedly knew about all along?

The only allegedly protected activity that occurred in close proximity to the destruction of the photographs is the untimely grievance plaintiff filed June 13, 2006 seeking to have his photographs kept in his main property. Defendant did not destroy the photographs until almost two weeks later. It is hard to see why defendant would have given any consideration to plaintiff's grievance, filed 13 days earlier and rejected, when he destroyed the photographs. At the time the photographs were destroyed, plaintiff was in the process of appealing only the rejection of the grievance (not even its merits). Even if a jury believed that defendant knew that plaintiff wanted the photographs sent to his mother, defendant would have learned this on June 14, 2006. Why would he have waited another

12

twelve days to destroy them, risking the chance that plaintiff could prevail on his grievance?

Plaintiff's story has too many gaps to allow a reasonable jury to find that his grievances and threats of grievances were a reason for defendant's destruction of photographs belonging to plaintiff that had been determined to be contraband. Therefore, I will grant defendant's motion for summary judgment as to plaintiff's First Amendment retaliation claim.

This leaves defendant's state law retaliation claim, which arises under section 1, article 3 of the Wisconsin Constitution. As I explained when I granted plaintiff's request for leave to proceed on his state law retaliation claim, that claim must "rise or fall" with his federal First Amendment claim, because the state constitution affords the same free speech protections as those of the First Amendment. Dkt. #11, at 5 (citing Lawson v. Housing Authority, 270 Wis. 269, 274, 70 N.W.2d 605, 608 (1955)). Because plaintiff has failed to adduce sufficient evidence that defendant violated his First Amendment rights, he has also failed to adduce sufficient evidence that defendant violated his state law rights of free speech. Therefore, I will grant defendant's motion for summary judgment as to his state law retaliation claim.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Michael

Sherman, dkt. #26, is GRANTED. The clerk is directed to enter judgment in favor of defendant and close this case.

Entered this 8th day of June, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge